B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| IN RE:<br><br>ROBERT LAWRENCE CLUTTER and<br>MELISSA DAWN CLUTTER,<br><br>Debtors. | CASE NO. 1:18-bk-00866<br><br>CHAPTER 7<br>No Asset<br><br>JUDGE B. MCKAY MIGNAULT |
| ROBERT LAWRENCE CLUTTER,<br><br>Plaintiff,<br><br>v.<br><br>FIRST COMMUNITY BANK,<br><br>Defendant. | ADVERSARY PROCEEDING<br>NO. 1:25-ap-00029 |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

Pending is the *Motion to Dismiss* [dkt. 4] (the "Motion") and accompanying memorandum [dkt. 5], filed by Defendant First Community Bank (the "Defendant"); the *Debtors' Response in Opposition to First Community Bank's Motion to Dismiss* [dkt. 9] (the "Response"), filed by Plaintiff Robert Lawrence Clutter (the "Debtor" or "Mr. Clutter"); and the Defendant's reply filed thereto [dkt. 10]. A hearing was held on the Motion on March 19, 2026 (the "Hearing"), at which the Court heard argument and took the Motion under advisement. Present at the Hearing were counsel for the Debtor, Gail W. Kahle; and counsel for the Defendant, Michael R. Proctor. All briefing having been completed, the matter is now ripe for adjudication. For the reasons stated herein, the Motion is **GRANTED**.

**I.**

The Court is vested with subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). The Court has authority to consider and resolve the issues raised under 28 U.S.C. § 157(b)(1).

There does not appear to be any material dispute as to the basic facts of the controversy. The Debtor's adversary complaint [dkt. 1] (the "Complaint") alleges as follows. Mr. Clutter signed a promissory note in favor of the Defendant in the amount of $430,000.00, which was secured by a deed of trust encumbering real property located in Upshur County, West Virginia (the "Property"). Compl. ¶ 10. On September 10, 2018, the Debtor and his wife, Melissa Dawn Clutter, sought relief pursuant to Chapter 7 of the Bankruptcy Code. *Id.* ¶ 5. Thereafter, on June 28, 2019, the Court entered an order granting a discharge to the Debtor and Mrs. Clutter pursuant to 11 U.S.C. § 727. *Id.* ¶ 8. Mrs. Clutter has since passed away. *Id.* ¶ 5.

After the discharge was entered, Mr. Clutter became delinquent on the payment of real property taxes on the Property to the Sheriff of Upshur County, West Virginia (the "Sheriff"). *Id.* ¶ 11. As a result of the delinquency, on or about April 26, 2023, the West Virginia State Auditor approved a sale of the tax lien on the Property to We R Farmers, LLC ("We R Farmers"), for a purchase price of $60,000.00. *Id.* ¶ 12. The amount of back taxes, penalties, and costs due on the Property was $11,151.21, resulting in a surplus payment by We R Farmers of $48,848.79 (the "Surplus Proceeds"), currently being held by the Sheriff. *See id.* ¶ 13. The deed conveying the Property to We R Farmers was recorded on August 12, 2024. *Id.* ¶ 18.

Less than a year later, on April 19, 2025, the Defendant filed a petition for the Surplus Proceeds in the Circuit Court of Upshur County, West Virginia, pursuant to W.Va. Code § 11A-3-65, asserting a right to payment of the Surplus Proceeds as an "assign" of the Debtor. *Id.*

¶ 21; *see* Mot., Ex. A, *Petitioner First Community Bank's Petition for Surplus Funds* (the "Petition").[1] In the Petition, the Defendant asserts that it "is not seeking to collect this outstanding balance against Robert Clutter or the Estate of Melissa D. Clutter; rather, [the Defendant] is seeking to enforce its lien rights arising through the Deed of Trust." Pet. ¶ 21. The Petition names the Debtor, his wife's estate, and the Sheriff as respondents. *Id.* ¶¶ 2, 3, 5. The Petition explicitly alleges that the Defendant "makes no monetary claim" against Mr. Clutter or his wife's estate and names the Sheriff as a party only because he "holds the [S]urplus [P]roceeds." *Id.*

Mr. Clutter's Complaint asserts that the Defendant's Petition is an attempt to collect a discharged debt as a personal liability, thereby violating the discharge injunction set forth in 11 U.S.C. § 524(a). Compl. ¶¶ 24-34. Mr. Clutter argues that the delivery of the deed to We R Farmers extinguished the Defendant's security interest, rendering the Petition an *in personam* action. *Id.* ¶ 27.[2] The Defendant moved to dismiss the case, contending that the underlying state court Petition is an action *in rem* against the Property, which is not subject to the discharge injunction. *See* Def.'s Mem. in Supp. [dkt. 5] at 8. Alternatively, the Defendant argues that its filing of the Petition was objectively reasonable and that there is a fair ground of doubt as to whether the discharge order barred its conduct. *Id*. at 8-9. Because the Court finds that the state

[1] "Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (cleaned up). The Court may consider the Defendant's Petition because it was explicitly relied upon in the Complaint and is integral to determine whether the Defendant pursued the Debtor in his personal capacity. *See, e.g.*, Compl. ¶¶ 21, 25, 26, 29. Mr. Clutter has not objected to its authenticity.

[2] At the Hearing, Debtor's counsel explained that Mr. Clutter assigned his interest in the Surplus Proceeds to an entity named Hennepin Surplus Recovery, LLC. The Court did not consider this statement in its determination under Fed. R. Civ. P. 12(b)(6). *See Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 608 (D. Md. 2016) ("As a general proposition, extrinsic evidence does not factor into the Rule 12(b)(6) equation.").

court Petition is an *in rem* proceeding that does not violate the discharge injunction, the Court does not address the Defendant's alternative argument.

**II.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). While the Federal Rules of Civil Procedure require "only a short and plain statement of the claim showing that the pleader is entitled to relief," it must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). To survive a Rule 12(b)(6) motion, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* In considering a Rule 12(b)(6) motion, the Court takes the plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and entitle it to relief. *Id.*

**III.**

The Court must determine whether the Debtor has plausibly alleged that the Petition constitutes an attempt to collect a discharged debt as the Debtor's personal liability. Section 524(a)(2) of the Bankruptcy Code provides:

> (a) A discharge in a case under this title . . .
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such

> debt as a *personal liability* of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2) (emphasis added). A discharge extinguishes a debtor's personal liability, but it generally does not affect any *in rem* or *quasi in rem* rights that a creditor may have against the debtor's property. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property."); *Frazier v. Lendmark Fin. Servs., LLC (In re Frazier)*, 672 B.R. 878, 886 (Bankr. S.D. W.Va. 2025) (holding that a "discharge in bankruptcy proceedings extinguishes the *personal liability* of the debtor but not a valid lien upon his or her property" (emphasis in original)); *Powder Mill Vill. v. Miller (In re Miller)*, 674 B.R. 316, 330 (Bankr. D. Md. 2025) ("Typically a creditor may exercise its *in rem* rights against property without implicating the protections of the discharge injunction.").

In other words, the right of a creditor to foreclose on a prepetition lien survives or "passes through" the bankruptcy unaffected by the discharge, so long as the lien has not been avoided in the bankruptcy case. *See Hughes v. MTGLQ Invs., LP (In re Hughes)*, 667 B.R. 282, 296 (Bankr. M.D.N.C. 2024) ("Unless a security interest or lien is avoided, a discharge has little, if any, impact on a creditor's ability to proceed in rem against the property securing the claim."); *Thompson v. Bd. of Trs. of the Fairfax Cty. Police Officers Ret. Sys. (In re Thompson)*, 182 B.R. 140, 154 (Bankr. E.D. Va. 1995) (same). As a result, a creditor may pursue its remedies *in rem* and satisfy its surviving claim after a discharge. *See, e.g.*, *N. Tex. Cap. Partners, L.P. v. Dorvil (In re Dorvil)*, 665 B.R. 35, 51 (Bankr. N.D. Tex. 2024) (noting that it is permissible to foreclose on property secured by a lien after entry of a discharge); *Gleason v. GVL Lake Props., LLC (In re Gleason)*, 510 B.R. 114, 123 (Bankr. E.D. Ky. 2014) ("*In rem* actions regarding the status of a debtor's prepetition property do not violate the discharge, and decisions on those actions, right or

wrong, cannot modify the discharge."); *In re Transtrum*, No. 01-40005, 2006 Bankr. LEXIS 2313, at *8, 2006 WL 2556699, at *3 (Bankr. D. Idaho June 1, 2006) (holding that the renewal of a creditor's judgment lien and subsequent foreclosure did not violate the discharge injunction).

Given that this *in rem*/*in personam* distinction is dispositive to determining whether a discharge violation occurred, the Court begins by defining those terms. An "in rem" action is defined as being "against a thing," or "involving or determining the status of a thing, and therefore the rights of persons generally with respect to that thing." *See In rem*, BLACK'S LAW DICTIONARY (12th ed. 2024). The term "in personam," in contrast, means "against a person" or "involving or determining the personal rights and obligations of the parties." *See In Personam*, BLACK'S LAW DICTIONARY (12th ed. 2024). The Supreme Court has explained the difference between *in rem* and *in personam* actions as follows:

> If a court's jurisdiction is based on its authority over the defendant's person, the action and judgment are denominated "in personam" and can impose a personal obligation on the defendant in favor of the plaintiff. If jurisdiction is based on the court's power over property within its territory, the action is called "in rem" or "quasi in rem." The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner . . . [T]he owner is affected only "indirectly" by an in rem judgment adverse to his interest in the property subject to the court's disposition.

*Shaffer v. Heitner*, 433 U.S. 186, 199 (1977). The Fourth Circuit has similarly distinguished these terms: *in rem* actions are prosecuted to "enforce a right to *things*," while *in personam* actions are those in which an "*individual* is charged personally." *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957 (4th Cir. 1999) (emphasis in original). Critically, *in rem* actions "affect only the property before the court and possess and carry no *in personam* significance, other than to foreclose any person from later seeking rights in the property subject to the *in rem* actions." *Id*. *In rem* actions require only "that a party seeking an interest in a *res* bring the *res* into the custody of the court and

provide reasonable, public notice of its intention to enable others to appear in the action to claim an interest in the *res*." *Id.*

Applying this framework, courts routinely conclude that actions seeking recovery of sale proceeds are *in rem* actions and therefore do not violate the discharge injunction. *See, e.g.*, *Polk v. Cnty. of Contra Costa*, No. 1:12-CV-0290, 2014 U.S. Dist. LEXIS 111713, at *24, 2014 WL 3940206, at *9 (E.D. Cal. Aug. 11, 2014) (affirming the bankruptcy court's conclusion that a creditor may retain sale proceeds based on a consensual lien because the creditor had an interest that survived the discharge); *Cohen v. Stewart*, No. WDQ-14-0611, 2014 U.S. Dist. LEXIS 78335, at *8, 2014 WL 2574550, at *3 (D. Md. June 5, 2014) (concluding that an individual seeking access to funds controlled by a state court invokes *in rem* jurisdiction); *Transtrum*, 2006 Bankr. LEXIS 2313, at *8, 2006 WL 2556699, at *3 (concluding that the creditor did not violate the discharge injunction by seeking to collect its judgment lien when the debtors attempted to sell the property). By contrast, suits seeking to establish personal liability against the debtor—even where styled as actions against property—remained barred by the discharge injunction. *See Schreiber v. Parness Law Firm, PLLC (In re Nelkin & Nelkin P.C.)*, 674 B.R. 545, 568 (Bankr. S.D. Tex. 2025) (finding a violation of the discharge injunction where the action sought "to establish damages directly" against the debtor).

**IV.**

Accepting the allegations in the Complaint as true and in the light most favorable to the Debtor, the Complaint fails to state a claim. The Court finds that the underlying state court action fits squarely within the definition of an *in rem* proceeding.

As set forth above, a proceeding is *in rem* when it involves "the status of a thing," or establishing the rights of a person with respect to that thing. *In rem*, BLACK'S LAW DICTIONARY

(12th ed. 2024). To determine whether the Defendant's Petition may be characterized as *in rem* or *in personam*, the Court must look to the allegations asserted therein. *See Banco Popular, N. Am. v. Kanning*, 638 F. App'x 328, 342 (5th Cir. 2016) ("In order to characterize the action as *in rem* . . . or *in personam*, we first must look behind the form of the action to the gravamen of [the] complaint and the nature of the right sued on." (cleaned up)); *Brooks v. U.S.*, 833 F.2d 1136, 1143 (4th Cir. 1987) (holding that "[w]hether a proceeding is in rem or in personam is determined by its nature and purpose, and by these only").

The Defendant's Petition is brought under W.Va. Code § 11A-3-65. W.Va. Code § 11A-3-65 provides that:

> The former owner of any delinquent or nonentered lands sold pursuant to sections forty-five and forty-eight of this article, his heirs or assigns, shall be entitled to the surplus received from the sale over and above the taxes and interest charged or chargeable thereon including all costs of the sale, if his or their claim be filed in the circuit court of the county in which the land is situated within two years after the date of confirmation of said sale. If no claim is filed with the court within the two years, then such surplus shall be paid by the sheriff to the Auditor for credit to the general school fund.

*Id*. The Petition explicitly alleges that it "is not seeking to collect this outstanding balance against Robert Clutter or the Estate of Melissa D. Clutter; rather, [the Defendant] is seeking to enforce its lien rights arising through the Deed of Trust." Pet. ¶ 21. It also plainly alleges that the Defendant "makes no monetary claim" against Mr. Clutter or his wife's estate. *Id.* ¶¶ 2, 3.

The focal point of the Defendant's Petition, therefore, is the *res* (i.e., the Surplus Proceeds). The nature of the right being sued upon is the Defendant's purported entitlement to the Surplus Proceeds, and the Petition requests that the Sheriff release these funds to the Defendant. There is no allegation seeking to establish damages directly against Mr. Clutter. *Cf. Nelkin*, 674 B.R. at 568 (finding a violation of the discharge injunction where the action sought "to establish damages directly against [the debtor]"). To be sure, the Petition lists the Debtor as a party that

could be affected by a potential distribution of the Surplus Proceeds to the Defendant. The fact that the Debtor is listed as a party, however, is insufficient by itself to establish a discharge violation—particularly when, as here, the Petition makes clear that the Defendant does not seek to collect from Mr. Clutter personally. *See In re Campbell,* No. 10-22561, 2014 Bankr. LEXIS 34, at *12-13, 2014 WL 32161, at *5 (Bankr. E.D. Ky. Jan. 6, 2014) (holding that "it is permissible to commence or continue prosecution against a debtor as a nominal defendant" so long as "no collection action [is] taken against the debtor"); *Brown v. Quantum3 Grp. LLC (In re Brown)*, 606 B.R. 40, 48 (B.A.P. 9th Cir. 2019) (holding that the "mere filing of a complaint against a debtor by a prepetition creditor does not necessarily violate the discharge injunction"). Because the Defendant's Petition seeks only the recovery of sale proceeds, rather than seeking to establish personal liability against Mr. Clutter, the Court concludes that the action is *in rem* and therefore does not violate the discharge injunction.

Notably absent from the Debtor's Complaint is an allegation that the Debtor filed suit for the Surplus Proceeds pursuant to W.Va. Code § 11A-3-65. The absence of this allegation further supports the Court's conclusion that the Defendant's Petition is an *in rem* proceeding. The Debtor himself does not have the proceeds in his possession, nor has he established that he has any right to the Surplus Proceeds. Because the Surplus Proceeds are not in the Debtor's possession, the Defendant cannot collect the Surplus Proceeds from the Debtor *in personam*, even if the Petition is ultimately successful.[3] *Cf. Nelkin*, 674 B.R. at 568 (finding action violated the discharge injunction because "if Plaintiff's Claims are successfully prosecuted, [the debtor] would be liable for the damages requested"). The state statute provides that the former owner "shall be entitled"

[3] The Court makes no ruling as to the merits of the Defendant's state court Petition. Whether or not the Defendant is ultimately successful does not change the *in rem* nature of the action.

to the Surplus Proceeds, but there is an explicit condition precedent: the former owner must file suit within the prescribed two-year period. W.Va. Code § 11A-3-65. If that condition is not met (and there is no allegation here that it has been), the funds are paid to the West Virginia State Auditor, not Mr. Clutter. *See id*.

Finally, there is no allegation in the Complaint that the Defendant's lien was avoided in the bankruptcy case. A creditor's right to payment in the form of proceeds survives the bankruptcy case unless the lien has been avoided. *See Hughes*, 667 B.R. at 296; *Thompson*, 182 B.R. at 154. There was no motion to avoid or to otherwise disallow the Defendant's lien in the Debtor's bankruptcy case. *See* Case No. 1:18-bk-00866. Therefore, the lien survived the bankruptcy discharge.

Under these circumstances, the Debtor has failed to state a claim for a violation of the discharge injunction because the underlying state court action is an *in rem* proceeding. For the reasons set forth herein, it is hereby

**ORDERED** that the Motion is **GRANTED**; it is further

**ORDERED** that the Debtor's Complaint is **DISMISSED with prejudice**; and it is further

**ORDERED** that this adversary proceeding be **DISMISSED with prejudice** and removed from the Court's active docket.

**It is so ORDERED.**